## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL TAYLOR**                                           **CIVIL ACTION**

**VERSUS**                                                   **NO.  06-3798**

**BURL CAIN, WARDEN**                                        **SECTION "N"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Michael Taylor, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Taylor and a co-defendant, Robert Lee Alphonse, were charged by bill of information in St. Tammany Parish on December 1, 2000, with one count of possession of 28 grams or more, but less than 200 grams, of cocaine or its analogues and one count of possession of a firearm during the commission of the crime of possession of cocaine.[3]  The State later amended the bill of information to dismiss the firearm count as it applied to Taylor.[4]

Taylor was tried by a jury on May, 14, 15 and 16, 2001.[5]  The State alleged at trial that Taylor, accompanied by Alphonse, "drove his car from New Orleans to an outlet mall in Slidell to sell two ounces of crack cocaine to persons who (sic) he did not know were operating as undercover police informants.  The police intercepted the car driven by Taylor, got Taylor out of the car, found a gun, two pagers, three cell phones, the two ounces of crack cocaine which was scheduled for sale, as well as additional crack cocaine

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 12/1/00.

[4]Id. (handwritten notation dated 2/14/01).

[5]St. Rec. Vol. 1 of 3, Trial Minutes (4pages), 5/14/01; Trial Minutes (5 pages), 5/15/01; Trial Minutes (2 page), 5/16/01; Trial Transcript, 5/14/01; Trial Transcript (pp. 1-19),  5/15/01; St. Rec. Vol. 2 of 3, Trial Transcript (continued, pp. 20-131), 5/15/01; Trial Transcript, 5/16/01.

packaged for resale."[6]  Taylor was found guilty as charged on May 16, 2001.[7]  He was sentenced on June 28, 2001, to serve 25 years without parole or probation.[8]

The State later filed a multiple offender bill.[9]  At a hearing on August 10, 2001, the state trial court found Taylor to be a third offender and resentenced him to life in prison.[10]  On September 20, 2001, the court denied his motion to reconsider that sentence.[11]

Taylor's counsel alleged on appeal that the State improperly excluded two African-Americans from the jury during voir dire and that the state trial court erred in finding Taylor to be a third offender.[12]  On September 27, 2002, the Louisiana First

---

[6]St. Rec. Vol. 1 of 3, Trial Transcript, p. 12, 5/15/01.

[7]St. Rec. Vol. 1 of 3, Trial Minutes (2 pages), 5/16/01.

[8]St. Rec. Vol. 1 of 3, Sentencing Minutes, 6/28/01; St. Rec. Vol. 2 of 3, Sentencing Transcript, 6/28/01.

[9]St. Rec. Vol. 1 of 3, Multiple Bill, 5/17/01.

[10]St. Rec. Vol. 1 of 3, Minutes of Multiple Bill Hearing (2 pages), 8/10/01; St. Rec. Vol. 2 of 3, Transcript of Multiple Bill Hearing, 8/10/01.

[11]St. Rec. Vol. 1 of 2, Minute Entry, 9/20/01; Motion for Reconsideration of Sentence, 8/10/01; St. Rec. Vol. 2 of 3, Transcript of Motion Hearing, 9/20/01.

[12]St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2002-KA-0140, 9/27/02.

Circuit Court of Appeal found the claims to be without merit and affirmed Taylor's conviction, multiple offender adjudication and sentence.[13]

The conviction became final 30 days later, on Sunday, October 27, 2002, or the next business day, Monday, October 28, 2002, because Bone did not seek rehearing or file for timely review in the Louisiana Supreme Court.[14]  Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process); McGee v. Cain, 104 Fed. Appx. 989, 991 (5th Cir. 2004).

Taylor later filed an untimely writ application in the Louisiana Supreme Court on December 27, 2002.[15]  The court denied the writ without reasons on October 3, 2003.[16]

---

[13]Id.

[14]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[15]The record does not contain a copy of this writ application.  The postmark date of November 27, 2002, and the filing date were obtained by my staff from the office of the clerk of the Louisiana Supreme Court.  The application was postmarked and filed after the 30 days allowed under La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5.

[16]State v. Taylor, 855 So.2d 305 (La. 2003); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2002-KH-3232, 10/3/03.

Almost one year later, Taylor signed an application for post-conviction relief which was filed in the state trial court on September 28, 2004.[17]  He raised eight grounds for relief: (1) Counsel was ineffective when he called the co-defendant as a witness without adequate investigation as to how he would testify. (2) The state trial court erred in allowing into evidence both the transcript and the cassette tape recording. (3) Counsel was ineffective for failing to object to the admission of the transcript and cassette tape recording to preserve it for appeal. (4) Appellate counsel was ineffective because he did not raise the challenge to the admission of the transcript and cassette tape recording on appeal. (5) Appellate counsel was ineffective for failing to challenge on appeal the expert or opinion testimony of a police officer at trial that petitioner was a drug trafficker. (6) Counsel was ineffective for failure to request that the confidential informant be produced at trial, which denied petitioner the right to face his accuser. (7) Counsel was ineffective for failing to make a continuing objection to petitioner's absence from the pretrial hearing on the motion to suppress. (8) Counsel was ineffective for failure to object to the prosecutor's playing of the cassette tape recording during closing arguments when the transcript was already in evidence.

---

[17]St. Rec. Vol. 3 of 3, Application for Post-Conviction Relief, 9/28/04 (signed 9/26/04).

On October 12, 2004, the state trial court denied all of the ineffective assistance of counsel claims as meritless finding that Taylor failed to meet either prong of the test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and because of the overwhelming evidence of guilt.[18]  The court also denied Taylor's second claim, that the trial court erred in admitting evidence, because it should have been raised on appeal.

Taylor filed a writ application in the Louisiana First Circuit on November 4, 2004.[19]  The court denied the application on May 7, 2005, as procedurally improper for failure to include certain transcripts and documents with the application.[20]  The court instructed Taylor to file a complete application by April 4, 2005, which he did.[21]  The court denied the second writ application without reasons on June 17, 2005.[22]

---

[18]St. Rec. Vol. 3 of 3, Reasons for Denying Post Conviction Relief, 10/12/04.

[19]The record does not contain a copy of this writ application.  The filing date was obtained by my staff from the office of the clerk of the Louisiana First Circuit.

[20]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2004-KW-2444, 3/7/05.

[21]The record does not contain a copy of the second writ application, which was filed on March 21, 2005, according to the clerk of the Louisiana First Circuit.

[22]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2005-KW-0568, 6/17/05.

Taylor then timely mailed a writ application to the Louisiana Supreme Court, and it was filed on August 8, 2005.[23]  The court denied the writ without reasons on April 28, 2006.[24]

On June 29, 2006, Taylor filed a motion in the state trial court seeking to correct his life sentence, which he claims was rendered illegal by a change made to Louisiana multiple offender laws.[25]  The record does not contain a ruling on this motion.

II.   FEDERAL HABEAS PETITION

On July 12, 2006, Taylor filed a petition for federal habeas corpus relief in this court seeking relief on the following grounds:[26]  (1) The State improperly excluded two African-Americans from the jury panel during voir dire in violation of Batson v. Kentucky, 476 U.S. 79 (1986) and Miller-El v. Dretke, 545 U.S. 545 (2005). (2) The state trial court erred in allowing into evidence both the transcript and the cassette tape recording. (3) Petitioner received ineffective assistance of trial and appellate counsel when (a) trial counsel called the co-defendant as a witness without adequate investigation

_____

[23]The record does not contain a copy of the writ application.  The postmark date of July 14, 2005, and the filing date of August 8, 2005, were obtained by my staff from the office of the clerk of the Louisiana Supreme Court.

[24]State ex rel. Taylor v. State, 927 So.2d 282 (2006); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2005-KH-2088, 4/28/06.

[25]St. Rec. Vol. 3 of 3, Motion to Correct Illegal Sentence, 6/29/06.

[26]Rec. Doc. No. 1, Petition.

as to how he would testify; (b) trial counsel failed to request that the confidential informant be produced at trial, which denied petitioner the right to face his accuser; (c) trial counsel failed to make a continuing objection to petitioner's absence from the pretrial hearing on the motion to suppress; (d) trial counsel failed to object to the prosecutor's playing of the cassette tape recording during closing arguments when the transcript was already in evidence.  Taylor also argues that the state courts erred in interpreting and applying federal law,  in denying his ineffective assistance of counsel claims without an evidentiary hearing and in ruling in conflict with federal and state case law precedent.

The State filed an answer and memorandum in opposition to the petition alleging that Taylor's federal petition was untimely filed.[27]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[28] and

---

[27]Rec. Doc. Nos. 6, 7.

[28]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Taylor's petition, which, for reasons discussed below, is deemed filed in this federal court on June 20, 2006.[29]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Because of the condition of the state court record, I cannot determine the validity of the State's timeliness objection.  However, the record is clear that Taylor's second claim, regarding the state trial court's admission of evidence, is procedurally barred from

---

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Taylor's petition was filed by the clerk of court on July 12, 2006, the date the filing fee was paid.  Taylor dated his signature on the petition on June 20, 2006.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

federal review, and the remaining claims are wholly without merit, such that the petition should be dismissed with prejudice.

IV.   PROCEDURAL DEFAULT OF CLAIM NO. TWO

Taylor's second claim alleges that the state trial court erred in admitting into evidence both the transcript and cassette tape recording. He first raised this claim in his state court application for post-conviction relief. The state trial court denied relief because the claim should have been raised on direct appeal. This procedural denial was the last reasoned decision on the issue. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered. Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument**

**concerning the default as part of any objections he may file to this report**.  Magouirk,

144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a

state court if the decision of that state court rests on a state ground that is both

independent of the federal claim and adequate to support that judgment.  Coleman v.

Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.

1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S.

255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to

both substantive and procedural grounds and affects federal review of claims that are

raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in

a habeas petition unless the last state court to render a judgment in the case has clearly

and expressly indicated that its judgment is independent of federal law and rests on a

state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last

state court judgment does not indicate whether it is based on procedural default or the

merits of a federal claim, it is presumed that the court relied upon the same grounds as

the last reasoned state court opinion.  Ylst, 501 U.S. at 802.

11

A.     INDEPENDENT AND ADEQUATE

The state trial court denied relief on Taylor's trial court evidence claim because the claim should have been raised on appeal.  The basis for this reasoning can be found in La. Code Crim. P. art. 930.4(c), which provides for dismissal of a post-conviction application if it raises a claim which could have been raised on direct appeal.  For the state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

La. Code Crim. P. art 930.4(c) is clearly an independent state law procedural basis for denying review of an untimely raised post-conviction claim.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000) (same).  The state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  Glover, 128 F.3d at 902.  The

12

court in this case expressly ruled that Taylor was not entitled to relief on this claim because it was not raised on appeal.

I find, therefore, that the bar imposed by the state trial court was both independent and adequate to bar federal review of Taylor's claims in this court asserting that the trial court erred in admitting both the transcript and the cassette tape.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

13

In this case, Taylor has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Taylor from raising this claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Taylor has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Taylor's claim that the trial court erred in admitting the evidence is therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[30]

---

[30]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Taylor may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Taylor does not present and the record contains nothing that suggests his actual innocence.  On the contrary, the evidence of his guilt is substantial.  His claims address alleged failings in the underlying criminal proceedings and not his actual innocence.  He

presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Taylor has failed to overcome the procedural bar to this claim.  The claim that the state trial court erred in admitting the transcript and cassette tape recording is procedurally barred and must be dismissed with prejudice for that reason.

## V.   STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS

Taylor has also raised claims of a Batson violation and ineffective assistance of counsel which are not in procedural default and may be considered on the merits.  As to these claims, amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

16

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."   Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    BATSON VIOLATION (CLAIM NO. ONE)

Taylor alleges that the prosecutor used peremptory challenges to exclude the only two African-American panelists from the jury during voir dire and did so solely because of their race.  The record reflects that Taylor's counsel raised a Batson challenge during jury selection.  The state trial court overruled the challenge and found that the prosecutor properly had stated neutral reasons for excluding both potential jurors.

Taylor's appellate counsel also raised the Batson challenge on appeal.  The Louisiana First Circuit denied the claim finding that, under Batson and Purkett v. Elem, 514 U.S. 765 (1995), the State had offered race neutral reasons for the peremptory challenges to the two potential jurors.  The court further held that the trial court had weighed the objection of Taylor's counsel against the prosecutor's reasons before concluding that the prosecution's peremptory challenges were not race motivated.

18

The Louisiana courts relied on <u>Batson</u> and its progeny, which is the appropriate Supreme Court precedent to address a claim that a peremptory challenge may not be based on race. <u>See</u> <u>Moody v. Quarterman</u>, __ F.3d __, 2007 WL 102870, slip op. at *4-5 (5th Cir. Jan. 17, 2007). The United States Supreme Court recently revisited the appropriate analysis to be used in addressing a <u>Batson</u> challenge:

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. <u>Id</u>., at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. <u>Purkett v. Elem</u>, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. <u>Batson</u>, <u>supra</u>, at 98, 106 S.Ct. 1712; <u>Miller-El v. Dretke</u>, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." <u>Purkett</u>, <u>supra</u>, at 768, 115 S.Ct. 1769.

<u>Rice v. Collins</u>, 126 S. Ct. 969, 973-74 (2006).

In determining whether purposeful discrimination has occurred, the court may consider a number of factors, including (1) the percentage of African-American panelists who were challenged by the prosecutor with a peremptory strike; (2) comparison of the black panelists who were struck with the white panelists allowed to serve; (3) the

prosecutor's use of procedural mechanisms to move African-Americans to the back of the panel, where they are less likely to be selected; (4) evidence of a contrast between questions posed to black and non-black panelists where such contrast indicates intent to load questions to make a case to exclude the black panelists; (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors. United States v. Nelson, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing Miller-El v. Dretke, 545 U.S. 231 (2005)).

A Batson issue is a pure question of fact. Hernandez v. New York, 500 U.S. 352, 364, 369 (1991). The state court's answer to "'the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal,'" because such a finding largely turns on the court's "evaluation of the prosecutor's credibility." United States v. Sneed, 34 F.3d 1570, 1579 (10th Cir.1994) (quoting Hernandez, 500 U.S. at 364); accord Rice, 126 S.Ct. at 974-76; Moody, 2007 WL 102870, slip op. at *5 (citing Purkett, 514 U.S. at 768). "Thus we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)." Miller-El, 545 U.S. at 240; Moody, 2007 WL 102870, slip op. at *6.

Taylor suggests unconvincingly that the Supreme Court's opinion in Miller-El sets forth a "new rule of constitutional law"changing the standard of review for

20

discriminatory jury selections claims.  I find no suggestion by the Supreme Court or any other authoritative source that Miller-El is a new rule of law or that the Supreme Court has in any way called into question the Batson analysis.

To the contrary, in Rice, the Supreme Court reiterated that the "question of whether a state court errs in determining facts is a different question from whether it errs in applying law."  Rice, 126 S. Ct. at 976.  The Batson analysis used by the Louisiana courts is the appropriate standard for the courts to recognize and apply.  Id. at 976.  "The only question, as we have noted, is whether the trial court's factual determination at Batson's third step was unreasonable."  Id. at 976.

In keeping with this steadfast rule, the Miller-El court relied on, and actually applied, the Batson test in reaching its decision.  The Supreme Court in Miller-El, and in the subsequent ruling in Rice quoted above, reiterated the Batson rule that the burden of proving discrimination always remains on the petitioner who is alleging racial motivation.  The Miller-El court also emphasized that, pursuant to Section 2254(e), state court factual findings must be given the presumption of correctness unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."  Miller-El, 537 U.S. at 341.  This was not a change in the law.

In Miller-El, the Supreme Court focused on the third step of the Batson test to determine whether Miller-El had established that a practice and pattern of discrimination by the district attorney's office rebutted the presumption of correctness normally afforded to the state court's factual findings.  The Court looked not only to the lack of evidence to support the prosecutor's stated "neutral" reasons, but also to historical practices of discrimination by that particular prosecutorial office.  For example, the Court found that the district attorney's office had a manual explaining how to manipulate jury panels to avoid the seating of black jurors.  Considering such evidence, the Supreme Court found that Miller-El had rebutted the presumption of correctness and no credence could be given to the finding of neutral reasons for the exclusions of African-Americans by the prosecution.

It is true that the Supreme Court also noted that "Batson's individualized focus came with a weakness of its own" where it relied strictly on the prosecutor's stated reasons.  Miller-El, 545 U.S. at 240-41.  However, the Miller-El Court also recognized that the Batson analysis responded to this "weakness" where "Batson  explain[ed] that a defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination."  Miller-El 545 U.S. at 239-240 (quoting Batson, 476 U.S. at 96-97).  This certainly was not a new rule of law, and instead emphasizes Miller-El's reliance on the well-established Batson holding.  See Jordan v. Dretke, 2005 WL 2124 (N.D. Tex.

Aug. 31, 2005) (<u>Miller-El</u> is not a new rule of law but merely applied <u>Batson</u> to the case before it).

For these reasons, I find no merit to Taylor's suggestion that the state courts interpreted and applied the wrong rule of law when using the <u>Batson</u> analysis to address his claims.  This court's focus must be on the third step of the <u>Batson</u> test.  <u>Rice</u>, 126 S. Ct. at 976;  <u>Moody</u>, 2007 WL 102870, slip op. at *4.

In the instant case, the record does not reflect the race of any of the potential jurors on the panel list and none of the jurors were questioned about their race during voir dire.[31]  The only indication that there were only two African-Americans, both women, on the panel is gleaned from the <u>Batson</u> challenge made by Taylor's counsel.[32]  Although the State used peremptory challenges as to both, or 100% of the African-American jurors addressed to that point in the jury selection, the state trial court found no pattern of discrimination.[33]  The court, nevertheless, required that the prosecutor provide reasons for the peremptory challenges.

With respect to one potential juror, the prosecutor's decision to excuse was based on her problem with the penalty Taylor faced:

---

[31]St. Rec. Vol. 1 of 3, Trial Transcript, 5/14/01; Panel List, 5/14/01.

[32]St. Rec. Vol. 1 of 3, Trial Transcript, p. 63, 5/14/01.

[33]<u>Id</u>.

> BY MR. GARDNER (the prosecutor): Ms. Davis indicated she had a problem with the penalty.  Although she was rehabilitated by the Court, I felt like that penalty was going to prevent her from serving in a fair capacity.  I'm not about to put anybody on the jury who has a problem with the penalty.

State Record Volume 1 of 3, Trial Transcript, pp. 63-64, May 14, 2001.

The record reflects that the prosecutor explained to the jury during voir dire what the maximum and minimum penalties were in Taylor's case.  The juror answered his call to voice concerns:

> BY MR. GARDNER (the prosecutor):  . . . So I will ask each of you, the crime carries a penalty from ten to sixty years with hard labor.  That is without benefit of probation, parole or suspension of sentence.  That means even with good time laws, the best that could be expected, the minimum would be five years, maximum could be thirty or potentially sixty years.  I ask each of you if that presents a problem for you.  And if it does, please let us know.  We would much rather you say it now than find yourself two or three days from now that it does cause you some problems.
>
> If sometimes I appear to be nervous up here, it's because I am.  Ms. Davis, does the penalty present a problem for you?
>
> BY MS. DAVIS (the potential juror):  You say 10 to 30 years to 60 years, first time?
>
> BY MR. GARDNER:          Yes.
>
> BY MS. DAVIS:               Yes.

State Record Volume 1 of 3, Trial Transcript, pp. 22-23, May 14, 2001.

The potential juror later rated her interest in participating as a juror at the trial as a "one," on a ten-point scale, one representing the least amount of interest.[34]   She also indicated to counsel and the court that she had familial obligations that she did not want to miss if called as a juror in the trial,[35] but the prosecutor did not mention these comments when stating his reasons for exercising his peremptory challenge.

During the selection process at the bench, the prosecutor asked that this potential juror be excused for cause because of her concerns with the penalty range.[36]   The trial judge asked her and one other juror if they would be able to put aside their concerns with the penalty range and follow the law in determining guilt or innocence.[37]

Both jurors answered "yes" to the trial court's follow-up question indicating that they could follow the law.[38]   The court denied the request to excuse the first juror for cause, and the prosecutor then used a peremptory challenge to strike her.   The prosecutor also used a peremptory challenge later to excuse the second potential juror and another, who had indicated that "maybe" she had concerns about the sentencing range.

---

[34]St. Rec. Vol. 1 of 3, Trial Transcript, p. 36, 5/14/01.

[35]St. Rec. Vol. 1 of 3, Trial Transcript, p. 59, 5/14/01. The juror also indicated that her daughter was graduating with honors in ceremonies set for the Wednesday and Thursday evenings of the week of trial.

[36]St. Rec. Vol. 1 of 3, Trial Transcript, pp. 60-61, 5/14/01.

[37]Id. at 61.

[38]Id.

Upon objection by Taylor's counsel, the state trial court found no pattern of discrimination, and the prosecutor explained his peremptory challenges by offering a race neutral concern, concerning the jurors' problems with the penalty, which was accepted by the state trial court.

Thus, the transcript demonstrates that the prosecutor's concerns were strong enough for him to seek to have the first African-American juror excused because of her concerns about the penalty.  Only after his request that she be stricken for cause was denied did the prosecutor use his first peremptory challenge.

In addition, the only other jurors to voice concerns about the penalty were two white women, who in that regard were similarly situated to the first African-American potential juror.  As noted above, the State used peremptory challenges to excuse both of those white potential jurors as well.

Taylor has not offered any evidence, much less clear and convincing evidence, to establish that the trial court erred in finding a race neutral reason for the State's peremptory challenge or that the reason offered by the prosecutor for excusing the first African-American potential juror was objectively unreasonable.  The state trial court's finding is therefore entitled to a presumption of correctness.

The prosecutor also struck by peremptory challenge the second African-American woman.  After the Batson challenge was lodged, the prosecutor offered the  following reasons for excusing her:

26

BY MR. GARDNER:      . . .  As to Ms. Garrett, Ms. Garrett indicated that her interest in serving on this case was a one.  In addition, I prosecuted Jack Garrett, Demarco Garrett and one other Garrett who is also from Folsom in this Court who was prosecuted for possession with intent to distribute cocaine as a multiple offender.

State Record Volume 1 of 3, Trial Transcript, p. 64, 5/14/01.

Taylor's counsel replied that several of the white panelists who had been accepted by the State had also rated themselves a "one" on the ten-point interest scale.[39]  Defense counsel noted that the prosecutor had not asked the second African-American potential juror if she was related to the other Garretts from Folsom, Louisiana, or whether that would affect her participation in the trial.  The state trial court, nevertheless, found that the prosecutor had supplied a race neutral basis for his decision to strike this juror.

The state court trial transcript reflects that this second juror did in fact indicate that her interest in participating in the trial was a "one" on a ten-point scale.[40]  However, there were five jurors who rated themselves a "one":  two white men, one white or Hispanic woman, and two African-American women.  The prosecutor accepted the three white jurors in spite of this self-ranking.

The other focus of the prosecution's reasoning was on the fact that he had prosecuted other persons named Garrett from Folsom, presuming apparently that this panelist must be related to those of the same name from the same small town.  The juror

---

[39]Id. at 64.

[40]Id. at 37.

indicated that her husband's name was Wendell, which was not a name indicated by the prosecution as a prior defendant.[41]   However, the state trial court accepted the prosecutor's concerns as a valid, race neutral reason without requiring the prosecutor to question the potential juror further.

In a perfect setting, the state trial court might have developed the record further before finding the prosecutor's concerns about the potential juror's family credible.  The Supreme Court has recently, however, resolved that such is not the applicable standard for this court on habeas review:

> . . . the most generous reading would suggest only that the trial court had reason to question the prosecutor's credibility regarding [the juror's] alleged improper demeanor.  That does not, however, compel the conclusion that the trial court had no permissible alternative but to reject the persecutor's race-neutral justifications and conclude [petitioner] had shown a <u>Batson</u> violation.  Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.

<u>Rice</u>, 126 S. Ct. at 976-77.

Taylor has offered no persuasive rebuttal to the state court's finding of neutrality. Instead, he complains ultimately that the prosecutor's stated reasons for excusing the second African-American potential juror were not proven during voir dire.  The law requires that Taylor ultimately do more than just object to the reason offered or to the trial court's finding of neutrality.  Instead, he must rebut the presumption of correctness

---

[41]<u>Id</u>. at 5.

by clear and convincing evidence in order to show purposeful discrimination. Miller-El, 537 U.S. at 240, 251-52. Taylor has not done this.

The record indicates that the prosecution posed the same questions to all jurors. Both of the stricken African-American potential jurors were in the first group of 18 jurors called for voir dire. The record contains no indication, and Taylor has suggested none, that the prosecutor had any scheme in place to manipulate the jury pool to exclude African-Americans. None of the characteristics of purposeful discrimination appear from the record.

The state trial court was entitled to its credibility determination regarding the prosecutor's stated, neutral reasons for exercising peremptory challenges to these jurors. The trial court must be given great deference in judging the credibility of the prosecutor. Hernandez v. New York, 500 U.S. 352, 364 (1991).

For all of the foregoing reasons, I find that the state courts relied on the appropriate Supreme Court precedent to address Taylor's Batson claim, which is a separate question from the correctness of the state courts' Batson determination. Rice, 126 S. Ct. at 976. I also find that the state trial and appellate courts' factual findings that the prosecutor, without pretext, offered race neutral reasons for excusing the two potential jurors are entitled to the presumption of correctness. Taylor has failed to establish by any evidence, much less by clear and convincing evidence, that the state

29

courts erred or that the prosecutor acted with purposeful discrimination.  Taylor is not entitled to relief on this claim.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. THREE)

Taylor alleges that his trial counsel was ineffective in the following ways:[42] (1) He called the co-defendant without investigating his potential testimony.  (2) He failed to request production of the confidential informant, which violated his right to confront his accusers. (3) He failed to make a continuing objection to petitioner's absence from the hearing on the motion to suppress. (4) He failed to object when the prosecution played the cassette tape recording during closing arguments after the transcript had already been placed in evidence.

Taylor first raised these claims on post-conviction review in the state trial court. The state court held that, under the standards in Strickland v. Washington, 466 U.S. 668 (1984), counsel's actions were not deficient and otherwise were not prejudicial in light of the overwhelming evidence of guilt.  The trial court's ruling was the last reasoned decision on the issue because the Louisiana First Circuit and Louisiana Supreme Court denied relief without stated reasons.  Ylst, 501 U.S. at 802.

---

[42]Taylor indicated that his appellate counsel was ineffective but offered no particular grounds. Conclusory allegations of ineffective assistance of counsel are inadequate to obtain habeas relief.  Accord Miller v. Johnson, 200 F.3d 274, 282 (5th Cir.) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)), cert. denied, 531 U.S. 849 (2000).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in Strickland, 466 U.S. at 668, which the state trial court cited and applied.  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under

<u>Strickland</u> 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell</u>, 535 U.S. at 697 (citing <u>Strickland</u>, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not

amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

A.    CO-DEFENDANT CALLED TO TESTIFY

Taylor alleges that his counsel erred when he called the co-defendant, Robert Alphonse, as the sole witness for the defense.  Taylor alleges that police officers testified for the prosecution that the drug deal was set between a confidential informant and Alphonse, indicating that Taylor was not a planned participant in the deal.  Taylor argues that, when counsel questioned Alphonse, he testified that he had no drugs and that he just went with Taylor to sell the drugs.

Taylor claims that counsel failed to investigate or interview Alphonse to determine the detrimental nature of his testimony.  He suggests that his counsel's questions to Alphonse were prejudicial and led to testimony which fingered him as the drug dealer and sealed the conviction for the prosecution.

The transcript, however, does not support Taylor's suggestion that Alphonse condemned him in his testimony.  When questioned by Taylor's counsel, Alphonse stated

33

that he entered a guilty plea because <u>he</u> (Alphonse) was in possession of the cocaine and because he was afraid of a longer sentence.[43]

Alphonse also testified that he went with Taylor to the mall to meet with Anthony Dawson.[44]  The officers had already testified that an informant, Anthony Dawson, assisted them in securing a drug deal with Alphonse.[45]  Alphonse stated that Dawson had appeared at his place of work and asked if he knew someone who could get drugs for him.[46]  Alphonse told Dawson that he could get the drugs and Dawson kept calling him throughout the day about it.[47]  He testified that he found that he did not know anyone who had drugs.  As a result, he got together with Taylor to meet Dawson in the parking lot at the mall where he worked.[48]

When asked if he got the drugs from Taylor, Alphonse testified that "we didn't have the drugs."[49]  Alphonse testified that he got together with Taylor when he could not

---

[43]<u>Id</u>. at 124, 128, 129.

[44]<u>Id</u>. at 125.

[45]<u>See, e.g.</u>, St. Rec. Vol. 2 of 5, Trial Transcript (continued), pp. 32-33, 35 (Sergeant Barney Tyrney), 5/15/01.

[46]<u>Id</u>. at 126.

[47]<u>Id</u>.

[48]<u>Id</u>.

[49]<u>Id</u>. at 127.

find anyone who had drugs.[50]  Alphonse claimed that he did not know who put the drugs in the car.[51]

The transcript therefore reflects that Alphonse testified that he did not know where the drugs came from and that they were just in the car.  He told the jury that he got together with Taylor to go to the mall because he did not know anyone who could get the drugs to sell to Anthony Dawson.

Taylor is correct in that the record contains no information, and Taylor has offered none, regarding whether defense counsel interviewed Alphonse before calling him to testify.  Nevertheless, the record does not show that calling Alphonse to testify was prejudicial to the defense under the second prong of Strickland.

Alphonse did not testify that Taylor provided the drugs.  He in fact testified that he did not know where the drugs came from, although he conceded that they were found in the car.  The jury apparently did not find Alphonse's testimony credible in light of the evidence provided through the State's witnesses.

The State's evidence showed that the drugs were hidden under the ashtray of the car owned and driven by Taylor.  The cassette tape recording of Taylor and Alphonse

---

[50]Id.

[51]Id. at 125.

made at the scene of the arrest indicated that both Taylor and Alphonse knew that the gun was in the car.[52]  The jury heard the recording and had copies of the transcript.[53]

The State's evidence, not Alphonse's testimony, showed that Taylor had knowledge of the drugs found in his car.  Considering the record as a whole, Taylor has not shown that counsel erred in calling Alphonse to testify or that if he had not called Alphonse, the result of the proceeding would have been different.

Therefore, the denial of relief on this claim by the state court was not contrary to, or an unreasonable application of, Supreme Court precedent.  Taylor is not entitled to relief on this claim.

B.    FAILED TO ARGUE FOR PRODUCTION OF THE INFORMANT

Taylor alleges that his counsel erred in failing to require the State to produce Dawson, the confidential informant.  Taylor alleges that he had a right to confront Dawson as "the declarant of a statement."  Specifically, he claims that Dawson was the person who identified Taylor's car as the vehicle involved in the planned drug transaction with Alphonse.  This, he suggests, led to his stop by police and his ultimate arrest.  He therefore argues that counsel's failure to secure Dawson's appearance attributed or amounted to a violation of the Confrontation Clause.

---

[52]St. Rec. Vol. 2 of 3, Trial Transcript, p. 11-15, 5/16/01.

[53]Id.; St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 83, 5/15/01.

36

Taylor cannot demonstrate that he was prejudiced by his counsel's failure to secure the presence of Dawson, the known confidential informant who set up the drug deal. First, the officers testified that they were monitoring Dawson's communications with Alphonse, which would include the call when Dawson had Alphonse describe the car in which they would arrive.[54]   Second, and more significantly, the information received from Dawson by the officers was not testimonial in nature and therefore did not violate the Confrontation Clause.

For Taylor's Confrontation Clause rights to have been violated because he could not cross-exam Dawson, the statements attributed to Dawson must be testimonial in nature. In Crawford v. Washington, 541 U.S. 36, 68-69 (2004), the Supreme Court held that out-of-court statements by witnesses that are testimonial are not admissible, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine that witness.

The Crawford Court did not further define what constitutes a testimonial statement. It did, however, articulate a "core class" of testimonial statements: "ex parte in-court testimony or its functional equivalent . . .; extrajudicial statements . . .; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id.,

---

[54] See e.g., Id. at 104-110 (Detective Brad Rummel).

541 U.S. at 51-52 (internal quotations and citations omitted); <u>U.S. v. Crespo-Hernandez</u>, 186 Fed. Appx. 419, 424-425 (5th Cir. May 09, 2006).  The Supreme Court since has further distinguished between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

<u>Davis v. Washington</u>, 126 S. Ct. 2266, 2273-74 (2006).  The <u>Davis</u> Court determined that a statement is nontestimonial where the person "was speaking about events as they were actually happening, rather than 'describ[ing] past events.'"  <u>Id.</u>, 126 S. Ct. at 2276 (quoting <u>Lilly v. Virginia</u>, 527 U.S. 116, 137 (1999)).

In this case, the exchange between Dawson and Alphonse, as described by the police and Alphonse, do not resemble any of the "core class" of testimonial statements articulated by the Court in <u>Crawford</u>, 541 U.S. at 51-52.  Dawson was not being interrogated by police officers, nor was he making a formal statement.  Instead, the information regarding the identification and location of Taylor's car came when Dawson was under the direction of the police and while Dawson was coordinating the on-going drug transaction with Taylor and Alphonse themselves.  This type of statement would not invoke Taylor's Confrontation Clause rights.  <u>U.S. v. Crespo-Hernandez</u>, 186 Fed. Appx. at 425.

The premise of Taylor's ineffective assistance of counsel claim is based on Taylor's presumption that counsel's failure to call Dawson or require his presence at trial in some way violated his Confrontation Clause rights. This premise is false for the reasons discussed above. Thus, Taylor has failed to show that his counsel's failure to call Dawson was deficient performance of counsel or that it prejudiced his trial.

The denial of relief on this claim by the state courts was not contrary to, or an unreasonable application of Strickland. Taylor is not entitled to relief on this claim.

C.     NO CONTINUING OBJECTION TO HIS ABSENCE FROM THE MOTION TO SUPPRESS HEARING

Taylor alleges that his counsel was ineffective for failure to secure his presence, or lodge a continuing objection to his absence from, the pretrial motion to suppress hearing. In support of this claim, Taylor relies upon the following exchange in the transcript of the hearing:

BY MR. NETTERVILLE:          For the record, Bruce Netterville present for Michael Taylor. Can Mr. Taylor be brought out. [sic]

BY THE COURT:                Let's proceed.

State Record Volume 1 of 3, Transcript of the Motion to Suppress, p. 3, l. 15-20, 2/12/01.

Taylor suggests that this portion of the transcript does not reflect that he was actually brought into the hearing. He therefore claims that counsel should have objected

because he was denied his right to be present at this hearing, a critical stage of the proceeding.

The right to confrontation, or to be present to confront your accusers, is a trial right.  United States v. Algere, 457 F. Supp.2d 695 (E.D. La. 2005) (Vance, J.) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987); Mancusi v. Stubbs, 408 U.S. 204, 211 (1972)).  The law is not clear as to the extent the Sixth Amendment right to confront witnesses applies to pre-trial hearings.  Id.  The Supreme Court has held, however, that the Due Process Clause guarantees that a defendant is allowed to be present to the extent that a fair and just hearing would be thwarted by his absence.  Kentucky v. Stincer, 482 U.S. 730, 745 (1987);  United States v. Lampton, 158 F.3d 251, 255 (5th Cir. 1998).

In the instant case, however, Taylor has failed to establish that he was actually absent from the pretrial hearing on the motion to suppress.  For example, the minutes from the hearing clearly indicate that Taylor was present and accompanied by his counsel.[55]

In addition, a further reading of the same transcript quoted by Taylor contains the following exchange between the prosecutor and Detective Brad Rummel:

> Q.   Let me direct your attention to August 21st, 2000.  Did you participate in an investigation which let [sic] to the arrest of Robert Alphonse, Jr., and Michael Taylor?

---

[55]St. Rec. Vol. 1 of 3, Minutes of Motion to Suppress, 2/12/01.

A.    Yes, I did.

Q.    <u>Do you see them in the courtroom</u>, and if so, would you please identify them.

A.    Yes, sir, the gentleman in the yellow shirt and the gentleman in the purple shirt.

BY MR. GARDNER:    Let the record reflect that the witness has identified the defendants before the bar.

State Record Volume 1 of 3, Transcript of the Motion to Suppress, p. 4, l. 6-16. 2/12/01 (emphasis added).

The record supports a finding that Taylor was present in the courtroom at the hearing on the motion to suppress.  His claim is factually baseless and legally meritless. Denial of relief on this claim was not contrary to, nor an unreasonable application of, Supreme Court precedent.  Taylor is not entitled to relief on this claim.

D.    <u>FAILED TO OBJECT TO THE TAPE BEING PLAYED IN THE PROSECUTOR'S CLOSING ARGUMENT</u>

Taylor alleges that his counsel's performance was deficient because he failed to object when, during closing argument, the prosecutor played portions of the tape recording of Taylor's post-detention conversation with Alphonse.  Taylor argues that it was a violation of Louisiana law for the prosecution to submit evidence during the closing argument since the prosecution's case was already closed.  He further claims that the prosecutor's closing argument took on greater weight with the jury because it was

based on the tape. He also contends that counsel's strategy regarding the usefulness of the tape was unreasonable.

The record indicates that Taylor's counsel filed a pretrial motion to suppress the evidence and the tape recording, which was denied by the state trial court. With the evidence readily available for the prosecutor to use at trial, Taylor's counsel set forth the defense theories of the case to the jury during opening arguments.[56]  Among his arguments, counsel asked the jury to listen carefully to the cassette tape recording which would be played by the prosecutor. He told them that they would hear Taylor deny having drugs in spite of the fact that the prosecutor's transcript indicated an affirmative response to that question.

Counsel also questioned the secretary from the prosecutor's office who had transcribed the tape cassette recording of the conversations between Taylor and Alphonse, which were recorded as they sat in the back of a police unit while detained at the scene.[57]

The secretary admitted that she made five or six revisions to the transcript and that the final version, which was introduced at trial, was not perfect.[58] Copies of the transcript were distributed to the jury as evidence and, over defense counsel's objections, the

---

[56]St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 27-30, 5/15/01.

[57]Id. at 68 (Danielle Folks), 76, 82 (Detective Hart).

[58]Id. at 70-71 (Folks).

recording was played in open court in connection with the State's questioning of Detective William Hart, the officer responsible for the recording.[59]  The tape was played in part again during the State's closing argument.[60]  The court cautioned the jury before the tape was played that "the tape itself is the best evidence.  [The transcript] is an aid for you."[61]

The State's evidence at trial established that the crack cocaine was found in Taylor's car, underneath the ashtray in the front console.[62]  Defense counsel's strategy, as emphasized in his opening arguments, was to convince the jury that Taylor did not know about the cocaine or put the cocaine in the car.  In light of the inculpatory cassette recording, the record does not indicate, and Taylor has not suggested, any other reasonable defense in light of this strong evidence of guilt.

Although this defense was unsuccessful, it was reasonable in light of the facts of this case and should not be questioned in hindsight.  Strickland, 466 U.S. at 689; Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. May 24, 2004); see also, Nixon v. Epps, 405 F.3d 318 (5th Cir. 2005) (same).  As outlined above, that is not the function of this court on habeas review.  Taylor's claim in this regard is without merit.

---

[59]Id. at 83.

[60]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 11-15, 5/16/01.

[61]St. Rec. Vol. 2 of 3, Trial Transcript (continued), p. 83, 5/16/01.

[62]Id. at 41, 43-44, 49, 57-58 (Sergeant Tyrney), 64 (Corporal Maddox).

Taylor also suggests that his counsel should not have allowed the State to use the tape in closing.  He argues that this violated Louisiana procedural law.  Even if a violation of state law could somehow rise to the level of a constitutional deficiency for federal habeas corpus purposes, Taylor's premise is incorrect.

Louisiana law provides that "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."  La. Code Crim. P. art. 774.  Taylor himself recognizes that both the tape and the transcript were admitted into evidence.  Thus, the State's reliance on this evidence did not violate Article 774.  State v. Draughn, __ So.2d __, 2007 WL 102732, at *25 (La. Jan. 17, 2007) (prosecutors are allowed wide latitude in choosing closing argument tactics under Article 774).  Furthermore, the Louisiana Supreme Court has held that a statement properly admitted during the case-in-chief may be replayed or repeated during closing arguments.  State v. Guiden, 399 So.2d 194, 199 (La. 1981), cert. denied, 454 U.S. 1150 (1982); State v. Bonanno, 373 So.2d 1284, 1292 (La. 1979).  Thus, Taylor's counsel had no grounds, and was not required, to object to the use of the tape during closing argument.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  Taylor's is not entitled to relief on this claim.

Taylor has failed to establish that his counsel provided ineffective assistance of counsel in any way.  His claims to the contrary should be dismissed with prejudice as meritless.

### <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that the petition of Michael Taylor for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ____1st____ day of February, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

46